801 A.2d 245

KATHRYN CASEY AND SHEILA GAGLIANO, PLAINTIFFS–APPELLANTS, AND CAROL DE SANCTIS, JOHN EVERITT AND THOMAS MORRISSEY, INDIVIDUALLY AND AS REPRESENTATIVE OF THE SUBCLASS OF NON-RECOVERING SHAREHOLDERS, AND STUART L. PACHMAN, AS INTERIM REPRESENTATIVE OF THE SUBCLASS OF RECOVERING SHAREHOLDERS, PLAINTIFFS–RESPONDENTS, v. GEORGE G. BRENNAN, JOSEPH J. DISEPIO, PATRICIA M. KEYS, FRANK T. KURZAWA, GEORGE E. SCHARPF AND HAROLD G. SMITH, DEFENDANTS, AND AMBOY BANCORPORATION, A NEW JERSEY CORPORATION AND NEW AMBOY, INC., A NEW JERSEY CORPORATION, DEFENDANTS–RESPONDENTS, AND JONATHAN HEILBRUNN, ROBERT D. O'DONNELL AND CARMEN YACUZZIO, DEFENDANTS, AND SUSAN HERMANOS, DEFENDANT–INTERVERNOR.

Argued February 25, 2002—Decided July 16, 2002.

*David R. Strickler*, argued the cause for appellants (*Norris, McLaughlin & Marcus*, attorneys).

*Dennis T. Kearney,* argued the cause for respondents Amboy Bancorporation and New Amboy, Inc. (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Mr. Kearney and Helen A. Nau,* on the brief).

*Lisa J. Rodriguez,* submitted a letter in lieu of brief on behalf of the respondents Carol De Sanctis, John Everitt, Thomas Morrissey and Stuart L. Pachman (*Rodriguez & Richards,* attorneys).

PER CURIAM.

Based on the Court's grant of a cross-petition for certification filed by plaintiffs Kathryn Caesy and Sheila Gagliano, 170 N.J. 389 (2001), the sole issue before us is whether appellants can be considered statutory dissenters pursuant to *N.J.S.A.* 14A:11–1 in connection with their efforts to secure an award of counsel and expert fees.[1] In respect of that issue, the judgment of the Appellate Division is affirmed, substantially for the reasons expressed in the opinion of Judge Steinberg. 344 *N.J.Super.* 83, 780 *A.*2d 553 (2001).

STEIN, J., dissenting.

The issue before the Court is whether two minority shareholders who object to the cash price offered for their shares in a merger transaction can be considered statutory dissenters, pursuant to *N.J.S.A.* 14A:11–1, for the purpose of recovering counsel and expert fees. In the transaction, a "cash-out" merger, the majority shareholders retained equity in the newly formed corporation but minority shareholders were precluded from receiving stock in the new entity and were forced to accept cash for their shares at a price set by the corporation. The majority affirms the Appellate Division's holding that plaintiffs Kathryn Casey and Sheila Gagliano were not statutory dissenters because they would receive only cash for their shares under the corporate merger

---

[1] The Court contemporaneously denied a petition for certification filed by defendant Amboy Corporation and the cross-petition for certification filed by plaintiffs Carol DeSantis, et al. 170 *N.J.* 389 (2001).

transaction plan, and therefore could not rely on the statute as a basis for an award of such fees.

Because the purpose of the appraisal remedy is to protect minority shareholders from unfair treatment, in a transaction "wholly for cash" in which all stockholders receive cash for their shares, majority and minority shareholders are treated equally and the appraisal remedy is unnecessary. Recognizing that rationale, our statute dealing with a sale of assets transaction bars dissenting rights when the sale is "wholly for cash," *N.J.S.A.* 14A:11–1(1)(b)(ii)(A). The merger statute at issue here bars dissenting rights if the shareholders "receive cash," even if other shareholders retain stock in the surviving corporation. *N.J.S.A.* 14A:11–1(1)(a)(1)(B). The Appellate Division applied the merger statute literally in concluding that dissenters' rights were barred, even though the rationale for excluding dissenters' rights was inapplicable.

In my view, the merger and sale of assets statutes should be construed harmoniously to bar dissenters' rights only when the underlying transaction is "wholly for cash," thereby assuring equal treatment of all shareholders and justifying preclusion of dissenters' rights to appraisal and counsel fees.

## I

The procedural history and factual background are set forth in the Appellate Division's opinion. *Casey v. Brennan,* 344 *N.J.Super.* 83, 780 *A.2d* 553 (2001). Defendant Amboy Bancorporation served as a bank holding company, "a shell with one class of stock and one subsidiary, Amboy National Bank, that conducted its business in thirteen branches in Central New Jersey." *Id.* at 93, 780 *A.2d* 553. "Transactions in Amboy stock were handled by 'market-makers' instead of through public trading on a stock exchange" and "[d]uring the relevant period, Amboy had 420 shareholders." *Ibid.*

Because Amboy was extremely successful, it generated far more profits than it needed as capital to continue its operations. In essence, Amboy was accumulating

capital at a much higher rate than the growth rate of its assets. Accordingly, the return on equity was decreasing.

[*Ibid.*]

Although Amboy tried to remedy the situation by developing strategic plans including, "three unsuccessful attempts to buy other banks," *id.* at 93, 780 *A.*2d 553, the company was "still accumulating capital faster than other assets" by the spring of 1997, *id.* at 94, 780 *A.*2d 553.

> Ultimately, Amboy's board of directors decided to pursue Subchapter S status. *In order to obtain Subchapter S status, Amboy had to reduce its shareholder base to less than seventy-five qualified shareholders.* It retained counsel, tax experts and a valuation expert. One of the reasons for pursuing Subchapter S status was Amboy's belief that it could not solve its excess-capital problem simply by increasing the dividend, because that would subject too much income to double taxation, once at the corporate level and again at the shareholder level.
>
> [*Id.* at 94, 780 *A.*2d 553 (emphasis added).]

Robert Walters, the chairman of Bank Advisory Group, Inc. (BAG) a community bank advisor specializing in valuation, reorganizations, and mergers and acquisitions, was hired to provide a financial fairness opinion for the proposed transaction that would transform the company into a Subchapter S entity.

> On September 10, 1997, Amboy sent all shareholders notice of a forthcoming shareholder vote on a proposal to restructure Amboy to qualify for taxation as a Subchapter S status "closed corporation." *The notice stated that shareholders currently owning a sufficient number of shares, estimated at 15,000, would continue to be shareholders. Those owning fewer shares would "receive cash in exchange for their shares and cease to be shareholders," unless they took advantage of "the opportunity to purchase additional shares."*
>
> On September 16, 1997, Amboy and New Amboy, Inc. executed a merger agreement. New Amboy, Inc. was a shell corporation. Under the plan, Amboy would merge into it and be given the name Amboy Bancorporation. That same day, Amboy's board met and scheduled a shareholder's meeting for November 19, 1997, to vote on the plan....
>
> On October 24, 1997, BAG gave Amboy a financial fairness opinion in which it concluded that the price of $73 per share was "fair, from a financial standpoint, to all shareholders of the Company, including those shareholders receiving the Cash Consideration...."
>
> [*Id.* at 95, 780 *A.*2d 553 (emphasis added) (footnote omitted).]

All shareholders were sent a notice of a special meeting to vote on the plan and a proxy statement, "which shareholders were urged

to mark and return so that their shares would be 'voted in accordance with [their] wishes.'" *Id.* at 96, 780 *A.*2d 553.

> The proxy statement explained that, under the proposed plan, shareholders who did not own the minimum number of shares and did not "perfect their dissenters' rights" would receive $73 in cash for each share they owned. The plan was designed to result in a maximum of fifty-five continuing shareholders.
>
> [*Ibid.*]

In sum, the merger plan provided that shareholders who owned 15,000 shares of Amboy, or who purchased Amboy shares in order to increase their holdings to 15,000 shares, would continue to be shareholders. All other shareholders would receive cash. For plaintiffs Casey and Gagliano, who each owned 5030 shares of Amboy prior to the merger, the purchase right was not a feasible option because they did not have the financial resources to buy enough shares to acquire the minimum of 15,000 shares.

In November 1997, the merger was approved by a vote of more than two-thirds of the shares voted at the special meeting. The directors who had initiated the transaction controlled enough votes to ensure approval of the merger. Shareholders with fewer than 15,000 shares who voted against the merger ultimately cashed out by accepting the $73 per share payment. Nevertheless, Casey and Gagliano refused to take cash for their shares. Plaintiff Susan Hermanos, who also voted against the merger, refused the cash offer as well. Hermanos owned more than 15,000 shares, however, and was able to perfect her dissenters' rights in accordance with *N.J.S.A.* 14A:11–2 because she received stock rather than cash pursuant to the merger.

On December 5, 1997, plaintiffs Casey and Gagliano

> filed suit in the Chancery Division, Union County, against Amboy Bancorporation, the individuals on its board of directors, and New Amboy, Inc. They alleged that defendants misrepresented the terms of the merger and failed to offer a price that represented the statutorily mandated "fair value" to the detriment of shareholders who were required to sell their shares. They sought to enjoin or rescind the merger and to obtain fair value.
>
> [*Id.* at 97, 780 *A.*2d 553.]

Casey and Gagliano later filed an amended complaint, alleging that they possessed all the rights of statutory dissenters including

the right to recover fees pursuant to *N.J.S.A.* 14A:11–1 to –11. They also alleged that defendants had failed to inform them of their statutory right to dissent and to be paid fair value as statutory dissenters in violation of *N.J.S.A.* 14A:10–3(1).

In May 1998, Casey's and Gagliano's action was consolidated with two other actions. Both were class actions, one brought by plaintiffs Carol De Sanctis and John Everitt who had voted their shares against the plan, and included similar allegations of the "misleading nature of the merger and the failure to offer fair value." *Id.* at 97, 780 *A.*2d 553. The other class action complaint had been filed by Thomas Morrissey who also voted his shares against the plan and made similar allegations. Hermanos intervened to "pursue her statutory right to 'fair value.'" *Ibid.*

During the trial each party presented expert witnesses who provided opinions with regard to the fair value per share of the Amboy stock at the time of the transaction. Plaintiff Everitt had sent a copy of the proxy statement to Dan Westlake, "an expert who ran the Mergers and Acquisitions Department at Principal Securities Corp., and [ ] formerly a governor of the Federal Reserve Board ... [who] considered the [Amboy] plan an example of how banks were using Subchapter S status as 'an avenue to squeeze out small shareholders' in a way that Congress had not intended. Westlake also said BAG 'is known as a Subchapter S Squeeze-out machine.'" *Id.* at 99, 780 *A.*2d 553. The trial court appointed its own expert to assist in determining the fair value of the shares of the stock.

The trial court rendered an oral opinion in April 1999.

> [It] concluded that since the directors were also majority shareholders of Amboy, and would have benefitted from the merger, they had potential conflicts of interest with the minority shareholders. Accordingly, [it] imposed upon them the burden of showing that all material facts concerning the merger were fully disclosed.
>
> [*Id.* at 103, 780 *A.*2d 553.]

The trial court held that the proxy statement was "materially deficient," *id.* at 103, 780 *A.*2d 553, and that the representation that the price of $73 per share was fair to minority shareholders was "misleading, erroneous and incomplete," *id.* at 104, 780 *A.*2d

553. "Thus, he found, 'the vote of the consenting shareholders who participated in the approval of the transaction was not a fully informed shareholder's vote.' " *Id.* at 104, 780 *A.*2d 553. However, the court refused to impose liability on the individual directors because they had relied on their financial and legal experts in good faith. After a "meticulous analysis of the testimony and opinions of the experts," *the court found that the fair value for the Amboy shares was $90 per share. Ibid.*

Judgment was entered for all plaintiffs except those who had "cashed out" and were "estopped from recovery." *Ibid.* Prejudgment interest was awarded as well. In addition, Hermanos, whose receipt of stock qualified her for statutory dissenters' rights, was awarded counsel fees, expert fees, and costs. However, the court determined that pursuant to *N.J.S.A.* 14A:11–1, plaintiffs with less than 15,000 shares, such as Casey and Gagliano, did not have dissenters' rights because they were to receive cash in exchange for their shares under the plan of merger. Therefore, although Casey and Gagliano prevailed in their contention that the cash price per share was inadequate and that the proxy material was deficient, they were not entitled to an award of counsel fees, expert fees or other such costs.

Plaintiffs DeSanctis, Everitt and Morrissey appealed on behalf of themselves and the class, seeking recovery for those who "cashed out" and surrendered their shares, an increase in the determination of fair value of the shares, and the imposition of personal liability on the individual defendants. Defendants' cross-appealed seeking reversal, including a decrease in the fair value determined by the trial court, and reversal of the fees and costs award to Hermanos. Casey and Gagliano appealed seeking an increase in fair value as well. They also appealed the trial court's decision denying them an award of counsel fees, expert fees and costs.

The Appellate Division affirmed the trial court's decision in part, reversed in part, and remanded. The court stated:

Shareholders of a New Jersey corporation who would receive shares in the company resulting from a merger that would not be traded on a national exchange, like the continuing shareholders and Hermanos, have a statutory right to dissent from the merger, *N.J.S.A.* 14A:11–1(1)(a)(i)(B)(x), and to receive the "fair value" of their shares, *N.J.S.A.* 14A:11–3(2). However, *the statute by its express terms excludes those who would receive only cash for their shares, like the minority shareholders here. N.J.S.A.* 14A:11–1(1)(a)(i)(B)(x).

[*Id.* at 106–07, 780 *A.*2d 553 (emphasis added).]

However, the court held that

[n]evertheless, even those shareholders who do not qualify as statutory dissenters still have the right to claim fair compensation for their shares in the context of a cash-out merger, as an incident of the fiduciary duty of the majority to treat the minority fairly.

. . . .

The right to be treated fairly ... is also consistent with the restraint upon [the majority shareholders] of using their powers for their own personal advantage to the detriment of the minority shareholders.

[*Id.* at 107–08, 780 *A.*2d 553 (citation omitted).]

The court continued:

In our view, the dissemination of an inaccurate or misleading proxy statement in conjunction with a cash-out merger that sets forth an inadequate cash-out price is sufficient to allow non-statutory dissenters to challenge the merger, or claim fair compensation for their shares, unless otherwise precluded by some other statute, doctrine, rule or law. Thus, an allegation that the offered price is unfair is an adequate basis for inquiring into the fairness of the plan, particularly where, as here, it is bolstered by allegations that defendants' statements about the fairness of the price were misrepresentations. In these circumstances *our public policy requires that shareholders be permitted to challenge the valuation* even though they may not qualify as statutory dissenters. Accordingly, the judge correctly allowed all shareholders to challenge the valuation of the shares.

[*Id.* at 107, 780 *A.*2d 553 (citation omitted)(emphasis added).]

The Appellate Division found that the record clearly supported the trial court's conclusion that the proxy statement was "materially deficient" and misleading, and that the directors had breached their duty of fair dealing with the minority shareholders. *Id.* at 110, 780 *A.*2d 553. However, the Appellate Division was concerned about the valuation methods applied by the trial court and remanded the case for a recalculation of what constituted "fair value" of the Amboy shares. *Id.* at 113–15, 780 *A.*2d 553. Specifically, the court held that "a control premium should be considered in order to reflect market realities" and that "[b]ecause the [trial]

judge determined that a control premium was prohibited as a matter of law we are constrained to reverse and remand to permit the judge to consider what, if any, impact a control premium should have on the valuation of stock." *Id.* at 113, 780 *A.*2d 553. The court further held that the trial court had erred in denying recovery to those shareholders who had voted against the merger transaction but cashed in their shares. *Id.* at 120, 780 *A.*2d 553.

The Appellate Division also affirmed the trial court's determination that counsel fees, expert fees and costs should not be awarded to plaintiffs Casey and Gagliano because they did not qualify as statutory dissenters. *Id.* at 122, 780 *A.*2d 553. The court noted that not all shareholders who oppose corporate transactions qualify as *statutory* dissenters because the statute contains exemptions. Relying on *N.J.S.A.* 14A:11–1(1)(a)(i)(B), the court declared that one of those exemptions "covers a shareholder who will receive cash alone in exchange for . . . shares under the plan of merger or consolidation." *Id.* at 123, 780 *A.*2d 553.

> This provision covered Casey and Gagliano because they would be cashed-out under the plan as shareholders since they had fewer than 15,000 shares and had no intention or prospect of buying more. Since Hermanos would not be cashed-out under the plan, she qualified as a statutory dissenter, while Casey and Gagliano did not since they were to receive only cash under the plan.
>
> [*Ibid.*]

Relying on *N.J.S.A.* 14A:11–10, the Appellate Division held that the trial court correctly concluded that "Hermanos, who qualified as a statutory dissenter, was entitled to an award of counsel and expert fees," *id.* at 124, 780 *A.*2d 553, but that Casey and Gagliano, whose only option was to receive cash if they did not purchase additional shares, did not qualify as *statutory dissenters* and thus were not entitled to such fees and costs, *id.* at 125–26, 780 *A.*2d 553.

The court rejected Casey and Gagliano's argument that the statutory cash exception applied only to those transactions in which *all the shareholders* are being cashed out. The panel stated that the "statute is clear and unambiguous . . . [leaving] no room for judicial interpretation or resort to rules of construction or

extrinsic matters." *Id.* at 125, 780 *A.2d* 553. Although the court recognized the apparent inconsistency of awarding fees to Hermanos while denying them to Casey and Gagliano, it concluded that it lacked the authority to remedy the discrepancy. *Ibid.*

Amboy filed a petition for certification challenging the ruling adverse to its interests, and the class-action plaintiffs filed a petition for certification on the fair value issue. Plaintiffs Casey and Gagliano filed a cross-petition for certification that focused on the narrow issue of the denial of attorney and expert fees and costs. We granted certification solely on Casey and Gagliano's cross-petition and denied the other petitions. *Casey v. Brennan,* 170 *N.J.* 389, 788 *A.2d* 773 (2001).

Initially, New Jersey's dissenters' rights statute did not include a cash exception to the appraisal remedy in merger or consolidation transactions. *N.J.S.A.* 14A:11–(1)(a)(1969) (amended by L.1973, c. 366, § 60, eff. May 1, 1974.). The statute did and still does include a cash exception to the appraisal remedy for transactions concerning "[a]ny sale ... of all or substantially all of the assets of a corporation ... where such transaction is *wholly for cash.*" *N.J.S.A.* 14A:11–1(1)(b)(ii)(A)(2002)(emphasis added).

In 1973, the Legislature amended the statute and added a cash exception to dissenters rights in merger transactions. The statute now provides that "[a] shareholder shall not have the right to dissent from any plan of merger ... for which, pursuant to the plan ... he will receive (x) cash, (y) shares, obligations or other securities ..., or (z) cash and such securities." *N.J.S.A.* 14A:11–1(1)(a)(i)(B).

The Commissioners' Comment to the amendments states that "there is no appraisal right for a shareholder who will receive upon consummation of any such transaction [merger, consolidation, or sale of assets] *cash,* securities which are either listed on a national securities exchange or held of record by not less than 1,000 holders, or a combination of cash and securities." *N.J.S.A.* 14A:11–1, cmt. The Final Report of the Corporation Law Revision Commission regarding the amendments demonstrates that

the objective was to harmonize the treatment of dissenters' rights in both merger and sale of assets transactions:

> *The proposed amendment to section 14A:11–1 removes certain ambiguities and inconsistencies regarding shareholder appraisal rights.* Under the amended section, ... shareholders will not have the right of dissent from a merger, consolidation or sale of assets in either of the following situations: (a) if prior to the transaction the shareholders own stock which is listed on a national securities exchange ..., or (b) if upon consummation of the transaction the shareholders will receive cash, shares or other securities which will be listed on a national securities exchange ... *In its present form, section 14A:11–1 is inconsistent in approach as between mergers and consolidations on the one hand, and sales of assets on the other.*

Similar to the New Jersey statute, the Model Business Corporation Act also includes a cash exception for a sale of assets transaction. Section 13.02 provides that "[a] shareholder is entitled to dissent from ... a sale of ... substantially all, of the property of the corporation other than in the usual and regular course of business ... but not including ... *a sale for cash* pursuant to a plan by which all or substantially all of the net proceeds of the sale will be distributed to the shareholders within one year after the date of the sale." Model Bus. Corp. Act Ann. § 13.02. Although the language "wholly for cash" is not used, the comment following that section clearly explains that "a sale for cash" means that *all shareholders must receive cash* and further explains the rationale behind the cash exception:

> An exception is provided for sales for cash pursuant to a plan that provides for distribution within one year. *These transactions are unlikely to be unfair to minority shareholders since majority and minority are being treated in precisely the same way and all shareholders will ultimately receive cash for their shares.*
> [Model Bus. Corp. Act Ann. § 13.02, Official Comment 1(3) at p. 13–15 (3d ed.1997)(emphasis added).]

Several commentators recognize the need for dissenters' rights specifically for the circumstances surrounding "cash-out" mergers. *See* Barry M. Wertheimer, *The Purpose of The Shareholders' Appraisal Remedy*, 65 *Tenn. L.Rev.* 661 (1998); Robert B. Thompson, *Exit, Liquidity, and Majority Rule: Appraisal's Role In Corporate Law*, 84 *Geo. L.J.* 1 (1995). Significantly, most recently litigated appraisal cases involve "cash-out" mergers. Thompson, *supra*, 84 *Geo. L.J.* at 4. Mergers frequently occur for

the purpose of eliminating minority shareholders. Wertheimer, *supra,* 65 *Tenn. L.Rev.* at 677. That type of transaction, at issue in the case at hand, forces the minority shareholders to accept cash in an amount "chosen by the controlling shareholders." *Id.* at 678. Dissenters' rights overcome the corporation's offered price by permitting judicial determination of a fair price. *Ibid.* The appraisal remedy serves a "minority shareholder protection rationale," Wertheimer, *supra,* 65 *Tenn. L.Rev.* at 663, or a "check against opportunism by a majority shareholder in mergers and other transactions in which the majority forces minority shareholders out of the business and requires them to accept cash for their shares," Thompson, *supra,* 84 *Geo. L.J.* at 4.

### III

The reason the Legislature did not include the same language, "wholly for cash," to describe the cash exception in merger transactions as it used in the sale of assets subsection is unknown. However, it is evident from the Commissioners' Comment and the Final Report of the Commission that the amendments were intended to harmonize the statutes and eliminate inconsistencies between dissenters' rights in both merger and sale of assets transactions. The commentary ignores the distinction between the language describing the cash exception for merger transactions and the "wholly for cash" language used to describe the cash exception in a sale of assets transaction, implying that the difference is inconsequential.

Construing the statute to deny dissenters' rights in a merger transaction in which only minority shareholders receive cash would be inconsistent with the amendment's purpose of removing inconsistencies between merger and sale of assets dissenters' rights. It also would be inconsistent with the purpose of the exception because, if minority shareholders get cash and insider shareholders receive stock, the assurance of equality that justifies the exclusion of dissenters' rights in "wholly for cash" transactions is absent. Thus, if the Commission intended to create symmetry

between the two provisions, the cash exception in the merger statute should be construed consistently with the cash exception in the sale of assets provision. There is no plausible reason for providing minority shareholders more expansive statutory dissenters' rights in asset sale transactions than is provided for shareholders who receive cash in merger transactions.

More importantly, such a construction is inconsistent with the rationale behind the cash exception as explained in the comments to the Model Business Corporation Act. Dissenters' rights are unnecessary when all shareholders are treated the same. However, in a transaction where shareholders are treated differently, especially in a "cash out" merger transaction, the appraisal remedy protects the interests of minority shareholders from unfair treatment. The Appellate Division recognized the minority shareholders' right to be treated fairly and, in effect, provided them with equitable appraisal rights, but deprived them of the additional remedies available to statutory dissenters.

## IV

This Court has recognized that "[w]here a literal reading [of a statute] will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." *Aponte–Correa v. Allstate Ins. Co.*, 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000) (citing *Jersey City Chap. Prop. Owner's Protective Ass'n v. City Council*, 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969)). "As Justice Jacobs stated, '[w]hen all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms, or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.'" *Ibid.*

Construing the statute to deny dissenters' rights in merger transactions where some shareholders are offered only cash while other shareholders retain stock in the new entity is contrary to the policy reasons, purpose and design of dissenters' rights and the rationale for the cash exception, especially in the context of "cash

out" mergers. In addition, the obvious incongruity in awarding counsel and expert fees to Hermanos but not to Casey and Gagliano reveals how a literal reading of the statute that ignores the spirit and purpose of dissenters' rights will lead to unreasonable results.

Although plaintiffs Casey and Gagliano were to receive cash for their shares pursuant to the merger agreement, the cash per share offered them was found by the trial court to be significantly inadequate, and the insider shareholders received shares of stock constituting a controlling interest in the surviving bank entity. The literal reading of the statute by the lower courts denied Casey and Gagliano dissenters' rights. In my view, the "cash" exception to dissenters' rights in the merger statute should be construed harmoniously with the cash exception in the sale of assets statute. I would reverse the judgment of the Appellate Division.

Justice LONG joins in this opinion.

*For affirming*—Chief Justice PORITZ and JUSTICES COLEMAN, VERNIERO, LaVECCHIA and ZAZZALI—5.

*For reversing*—Justices STEIN and LONG—2.